UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Stan Malinowski,

Plaintiff,

-against-

Credit Control Services, Inc. d/b/a Credit Collection Services; Trans Union LLC a/k/a TransUnion,

Defendants.

Civil Action
Case No.: 1:26-cv-05722

**COMPLAINT**

Plaintiff Stan Malinowski ("Plaintiff"), by and through his attorneys, Petroff Amshen LLP, alleges as follows upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters:

1. Plaintiff brings this action against Trans Union LLC a/k/a TransUnion ("TransUnion") and Credit Control Services, Inc. d/b/a Credit Collection Services ("CCS"), arising from their willful and negligent violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, and, as to CCS, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.

2. Plaintiff never applied for automobile insurance from Esurance, an Allstate company. Someone else did, in his name, in June 2022, and never paid the premium. The unpaid balance reached his credit file as a $278.00 collection. Experian and Equifax report that Plaintiff has no collection account and no derogatory account of any kind. TransUnion reports this one.

3. On June 2, 2026, Plaintiff swore out a federal identity theft report naming the collection. Seventeen days later, he sent TransUnion a written dispute enclosing that report and demanding that the account be blocked and removed. Neither Defendant removed it. Eighty-three

days later, the collection was still on his TransUnion report, in the same amount, in the same collection status, and under the same account number and opening date.

## PARTIES

4. Plaintiff is an individual resident of the State of New York, and is a "consumer" as defined by 15 U.S.C. § 1681a(c).

5. CCS is a Delaware corporation, with its principal executive office in Norwood, Massachusetts, and is a "person" within the meaning of 15 U.S.C. § 1681a(b) and a furnisher of information to consumer reporting agencies as defined by and subject to the FCRA, including under 15 U.S.C. § 1681s-2.

6. TransUnion is a Delaware limited liability company, with its principal place of business in Chicago, Illinois, and is a "consumer reporting agency," as defined by and subject to 15 U.S.C. §§ 1681a(f) and 1681a(p).

7. Non-party Experian Information Solutions, Inc. ("Experian") is a consumer reporting agency that maintained a consumer file concerning Plaintiff throughout the period at issue.

8. Non-party Equifax Information Services LLC ("Equifax") is a consumer reporting agency that maintained a consumer file concerning Plaintiff throughout the period at issue.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as Plaintiff's claims arise under federal law.

10. This Court has personal jurisdiction over each Defendant pursuant to Federal Rule of Civil Procedure 4(k)(1)(A) and New York Civil Practice Law and Rules ("CPLR") §§ 301 and

302, and the exercise of jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment.

11. CCS transacts business within the State of New York within the meaning of CPLR § 302(a)(1). It collects consumer debts from New York residents and regularly furnishes information concerning them to the national consumer reporting agencies. CCS is registered with the New York Department of State as a foreign business corporation, has filed its assumed name Credit Collection Services there, holds a New York City debt collection agency license, and furnished the disputed collection account into the consumer file of Plaintiff, a New York resident.

12. TransUnion transacts business within the State of New York. It maintains consumer files on New York residents, including Plaintiff. It prepares and sells consumer reports concerning New York residents to users located in New York, including creditors, lenders, and landlords, and it prepared, sold, or disseminated consumer reports concerning Plaintiff to such users. TransUnion is registered to do business in New York and maintains a registered agent for service of process here, The Prentice-Hall Corporation System, Inc., 80 State Street, Albany, New York 12207-2543.

13. Plaintiff transmitted his dispute to TransUnion from New York, and TransUnion directed its reinvestigation and its handling of his identity theft block request at the consumer file of a New York resident. Plaintiff's claims against TransUnion arise from that New York-directed conduct.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, including the preparation, sale, and dissemination of consumer reports concerning Plaintiff and the reliance of users upon them here.

## STATEMENT OF FACTS

15. Plaintiff is a victim of identity theft.

16. In June 2022, a person Plaintiff cannot identify used his name and personal information to take out an automobile insurance policy with Esurance, an Allstate company. Plaintiff did not apply for that policy, authorized no one to apply for it, never held it, and received nothing under it. Throughout the relevant period, Plaintiff insured his own automobile with State Farm Mutual Automobile Insurance Company. The premium went unpaid, and the insurer placed the balance with a collection agency.

17. Plaintiff's June 2, 2026 credit reports from TransUnion, Experian, and Equifax reported a collection account furnished by CCS for an alleged debt to Esurance, an Allstate company, Account No. 9813XXXX, opened June 2, 2022 (the "CCS Account").

18. TransUnion reported the CCS Account in derogatory standing, as a charged-off collection, with a balance of $278.00 and a high credit of $278.00, last reported May 26, 2026.

19. Experian reported no collection account and no derogatory account of any kind.

20. Equifax reported no collection account and no derogatory account of any kind.

21. The three agencies describe the same man. Each reports Plaintiff at the same current address in Utica, New York, and each reports the same employer for him. TransUnion and Equifax report the same date of birth, and Experian reports the same year of birth. Each reports that Plaintiff has no delinquent account and no public record of any kind.

22. On June 2, 2026, the balances TransUnion reported for Plaintiff totaled $278.00. Experian's totaled nothing, and Equifax's totaled nothing. Those statements cannot all be accurate. Either Plaintiff owed the $278.00 that day, and two national agencies told every user of their

reports that he owed nothing, or he owed nothing, and TransUnion told every user of its reports that he owed a charged-off collection. Plaintiff did not incur the debt.

23. One furnisher reporting one alleged debt concerning one consumer does not produce a charged-off collection at one national agency and no such account at the other two where reasonable procedures are followed. That divergence is itself evidence that the procedures TransUnion followed were not directed at the maximum possible accuracy of what it published.

24. TransUnion had already recorded that Plaintiff contested the debt. Its June 2, 2026 report carried on the CCS Account, and on no other account in his file, the remark "Account information disputed by consumer, meets FCRA requirements," seventeen days before Plaintiff's written dispute was sent.

25. TransUnion's file had flagged Plaintiff as a fraud victim years earlier. A consumer report drawn from TransUnion's data on April 25, 2023, carried, as Plaintiff's personal statement, an FCRA initial fraud alert instructing users that action may be required under the FCRA before opening or modifying an account and directing them to contact Plaintiff by telephone. That report listed no collection account. The CCS Account, which TransUnion dates to June 2, 2022, entered Plaintiff's TransUnion file after April 25, 2023, into a file TransUnion had already annotated as belonging to a fraud victim.

26. On June 2, 2026, Plaintiff reported the crime to the Federal Trade Commission in FTC Identity Theft Report No. 202317083 (the "FTC Report"), signed under penalty of perjury. The FTC Report identifies the fraudulent item as "Credit Coll," original creditor "06 Esurance an Allstate Compa," in the amount of $278, and dates the fraud to June 2022. It names the CCS Account in the words TransUnion itself was publishing. The FTC Report records that Plaintiff

discovered the account in May 2026. He swore out the report within weeks of discovering it and disputed it seventeen days after that.

27. On June 19, 2026, Plaintiff sent TransUnion a written dispute of the CCS Account.

28. The letter told TransUnion that Plaintiff is a victim of identity theft, that the account does not belong to him, that he did not open it, that he authorized no one to open it, and that he received no benefit from it. It identified the account by tradeline name, original creditor, account number, and balance, and stated that TransUnion alone was reporting it. It asked that the account be blocked and removed and, failing that, that TransUnion investigate and correct or delete the reporting if it could not be verified. It asked for written confirmation of the result.

29. Plaintiff sent with the letter the proof TransUnion would need to act on it: the FTC Report, the consumer report showing the collection, and copies of his New York State driver license, his Social Security card, and, as proof of his address, an automobile policy renewal notice from State Farm Mutual Automobile Insurance Company mailed to him at his Utica home. The letter itself gave TransUnion his date of birth and the last four digits of his Social Security number.

30. The letter also told TransUnion what the reporting had already cost Plaintiff: a denied business loan, a credit card application rejected in his name, more than twenty hours of his own time, and stress, anxiety, depression, sleep issues, and anger and frustration. TransUnion knew, before it began its reinvestigation, that what it was publishing was doing Plaintiff ongoing harm.

31. Upon information and belief, TransUnion received Plaintiff's dispute package.

32. Upon information and belief, TransUnion gave CCS notice of the dispute, as 15 U.S.C. § 1681i(a)(2) required it to do within five business days of receiving it, and CCS received that notice.

33. On September 10, 2026, Plaintiff obtained a second report covering all three agencies, Reference No. M75654735. TransUnion was still reporting the CCS Account.

34. The September report carried the same account. The account number, the June 2, 2022 opening date, the $278.00 balance, the $278.00 high credit, the derogatory standing, the charged-off collection status, and the remark recording Plaintiff's dispute all stood as TransUnion had published them in June. Two fields had moved. TransUnion reported the account as last reported on August 18, 2026 rather than May 26, 2026, and recorded that same date as the date of last activity. Both fields record when CCS last sent the item to TransUnion.

35. The second report did not close the gap. The balances TransUnion reported totaled $323.00. Experian's totaled $45.00, and Equifax's totaled $45.00. The $278.00 separating TransUnion's figure from theirs is the CCS Account, which Experian and Equifax still did not report.

36. Plaintiff learned the outcome of his dispute by buying that report. Upon information and belief, TransUnion never wrote to him with the result of its reinvestigation, never described how it had investigated, and never told him he could place a statement of dispute in his file. His TransUnion file carried no such statement.

37. CCS furnished the account again on August 18, 2026, after it had notice of the dispute. Section 1681s-2(b) required CCS to investigate the disputed information, to review what TransUnion sent it, to report the results, and to modify, delete, or permanently block anything it could not verify. What CCS reported was the same balance and the same collection status it had reported before the dispute.

38. Eighty-three days separated Plaintiff's dispute from the September 10, 2026 report on which the collection was still published as his debt. Section 1681i(a)(1)(A) gave TransUnion

thirty days from receiving the dispute to complete its reinvestigation and record the current status of the disputed information or delete the item, and in no event longer than the forty-five days permitted if the period is extended under 15 U.S.C. § 1681i(a)(1)(B).

39. The dispute asked who had taken out the policy. TransUnion held what an answer starts from: a sworn federal report naming the tradeline and the insurer in TransUnion's own words, and Plaintiff's identification.

40. Whoever applied for that policy gave an insurer a name, an address, and a date of birth, and the insurer kept what it was given. Those records are in the possession, custody, and control of CCS and the original creditor. Plaintiff has none of them, because he had no part in the transaction.

41. Upon information and belief, TransUnion never asked for those records. It passed Plaintiff's dispute to CCS, adopted the answer CCS returned, published that answer as verification, and never examined its own file on Plaintiff.

42. TransUnion's remark recording Plaintiff's dispute did not correct the account. Noting that a consumer contests a debt is not deciding whether he owes it, and TransUnion went on reporting the CCS Account as Plaintiff's obligation before the dispute and after it.

43. TransUnion published the CCS Account by selling Plaintiff's consumer report to third parties. Its June 2, 2026 report records four such sales in the preceding two years, identifying the users as "Capitalone" on July 27, 2024, "CFNA" on September 3, 2024, "Capitalone" again on July 24, 2025, and "Elan Financi" on November 14, 2025.

44. Plaintiff pleads those disclosures to establish that the inaccurate reporting was material, that it reached actual lenders, and that the harm was already underway when TransUnion

received his dispute. He does not plead them as damages flowing from TransUnion's later failure to reinvestigate.

45. The sales continued after the dispute. TransUnion's September 10, 2026 report records three more, identifying the users as "Capitalone" on June 30, 2026, "Capital One" on August 8, 2026, and "Cap1 Basspro" on August 16, 2026, each of them while TransUnion was reporting the CCS Account as a $278.00 collection. Upon information and belief, TransUnion released his report to other users entitled to receive it in the same period.

46. As a direct and proximate result of the continued inaccurate reporting of the CCS Account, Plaintiff has suffered harm to his creditworthiness and financial reputation. His TransUnion credit score is the lowest of his three, and it is lowest because of a debt that is not his.

47. Before he sent his dispute, Plaintiff had been denied a business loan, and a credit card application made in his name had been rejected. Plaintiff pleads those denials as harm flowing from TransUnion's publication of the CCS Account in violation of 15 U.S.C. § 1681e(b), and as facts TransUnion had before it, from Plaintiff's own letter, when it began its reinvestigation.

48. By June 19, 2026, Plaintiff had spent more than twenty (20) hours trying to get the collection off his credit, and he has spent more of his own time on it since.

49. The reporting has cost Plaintiff more than time. He has had stress, anxiety, depression, sleep disturbance, and anger and frustration since June 2, 2026, the day he swore out the FTC Report. Sending TransUnion that report did not end it. On September 10, 2026, he learned the collection was still there, in the same amount and the same condition, and it has stayed on his file every day since.

## CAUSES OF ACTION

### COUNT I: Willful Noncompliance With The FCRA Against CCS (Violations of 15 U.S.C. § 1681s-2(b))

50. Plaintiff incorporates by reference each of the preceding paragraphs.

51. Upon TransUnion's transmittal of Plaintiff's notice of dispute, CCS was obligated under 15 U.S.C. § 1681s-2(b) to conduct a reasonable investigation with respect to the disputed information, to review all relevant information TransUnion provided, to report the results of that investigation to TransUnion, to report any finding of inaccuracy to every other consumer reporting agency to which it had furnished information concerning the CCS Account, and to modify, delete, or permanently block the reporting of information it found to be inaccurate, incomplete, or incapable of verification.

52. CCS had reasonable cause to believe that the information it furnished concerning the CCS Account was inaccurate. It holds no documentation showing that Plaintiff applied for, opened, or authorized the underlying account, and the notice of dispute carried Plaintiff's sworn statement that the account was the work of an identity thief.

53. After receiving notice of the dispute, CCS neither corrected nor deleted the information it had furnished. It reported the CCS Account to TransUnion again on August 18, 2026, with the same $278.00 balance, the same $278.00 high credit, and the same "Collection/Chargeoff" status it had reported before the dispute.

54. Had CCS conducted a reasonable investigation, the result would have been different. A reasonably prudent furnisher reviewing its own records of the account against Plaintiff's sworn FTC Report would have determined that Plaintiff did not apply for, open, or authorize the underlying account and that what CCS was furnishing was inaccurate.

55. CCS's conduct was willful. CCS acted with knowledge of its obligations under 15 U.S.C. § 1681s-2(b), or in reckless disregard of those obligations and of Plaintiff's rights, and any reading of those obligations that would permit its conduct here is objectively unreasonable.

56. As a direct and proximate result of CCS's willful failure to comply with 15 U.S.C. § 1681s-2(b), Plaintiff suffered the injuries alleged above, and is entitled to actual or statutory damages, punitive damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n.

**COUNT II: Negligent Noncompliance With The FCRA Against CCS**
**(Violations of 15 U.S.C. § 1681s-2(b))**

57. Plaintiff incorporates by reference each of the preceding paragraphs.

58. In the alternative to Count I, CCS's conduct constituted negligent noncompliance with its duties as a furnisher of information under 15 U.S.C. § 1681s-2(b).

59. CCS failed to exercise reasonable care in furnishing information concerning the CCS Account and in investigating Plaintiff's dispute. A reasonably careful furnisher would have measured what it was reporting against its own records of the account, would have weighed the sworn FTC Report, and would have deleted a tradeline it could not verify.

60. As a direct and proximate result of CCS's negligent failure to comply with 15 U.S.C. § 1681s-2(b), Plaintiff suffered the injuries alleged above, including the continued dissemination of derogatory information concerning him, damage to his creditworthiness and reputation, lost time, and emotional distress, and is entitled to actual damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681o.

**COUNT III: Willful Noncompliance With The FCRA Against TransUnion**
**(Failure to Conduct Reasonable Reinvestigation - Violation of 15 U.S.C. § 1681i)**

61. Plaintiff incorporates by reference each of the preceding paragraphs.

62. Upon information and belief, TransUnion received Plaintiff's June 19, 2026 dispute of the CCS Account.

63. Pursuant to 15 U.S.C. § 1681i(a), upon receipt of Plaintiff's dispute, TransUnion was required to conduct a reasonable reinvestigation to determine the accuracy of the disputed

information and record the current status of the disputed information, or delete the item from the file, within thirty days of receiving the dispute.

64. TransUnion failed to conduct a reasonable reinvestigation. Upon information and belief, TransUnion did no more than relay Plaintiff's dispute to CCS and adopt the answer CCS returned, without opening its own file on Plaintiff.

65. Plaintiff's dispute put in issue who had incurred the debt, not what the balance was. The sworn FTC Report named the disputed tradeline and its original creditor in the same words TransUnion was publishing, and it arrived with Plaintiff's identification and his written statement that the account was not his. A reinvestigation that confirmed the figure CCS had reported left that question untouched.

66. TransUnion failed to review all relevant information Plaintiff submitted, including the FTC Report, and failed to delete or correct the inaccurate information or to record its current status.

67. Upon information and belief, TransUnion never gave Plaintiff written notice of what its reinvestigation of the CCS Account produced, never described the procedure it used, and never told him of his right to add a statement of dispute to his file, as 15 U.S.C. § 1681i(a)(6) requires.

68. TransUnion's failure to perform a reasonable reinvestigation was willful. TransUnion acted with knowledge of its duties under 15 U.S.C. § 1681i, or in reckless disregard of those duties and of Plaintiff's rights, and any reading of those duties that would permit its conduct here is objectively unreasonable. TransUnion held a sworn federal identity theft report naming the tradeline, its own annotation that the account was disputed, and its own record that Plaintiff was a fraud victim, and it changed nothing.

69. TransUnion's own post-dispute report shows that the CCS Account was never revisited. Every field TransUnion published before the dispute it published again after it, including the remark recording Plaintiff's dispute, and the one change it made was to carry the item forward to a later reporting date.

70. As a direct and proximate result of TransUnion's willful failure to comply with 15 U.S.C. § 1681i, Plaintiff suffered the injuries alleged above, and is entitled to actual or statutory damages, punitive damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n.

**COUNT IV: Negligent Noncompliance With The FCRA Against TransUnion**
**(Failure to Conduct Reasonable Reinvestigation - Violation of 15 U.S.C. § 1681i)**

71. Plaintiff incorporates by reference each of the preceding paragraphs.

72. In the alternative to Count III, TransUnion's conduct constituted negligent noncompliance with its duty to conduct a reasonable reinvestigation of disputed information under 15 U.S.C. § 1681i(a).

73. TransUnion failed to exercise reasonable care in reinvestigating Plaintiff's dispute. A reasonably careful agency would have read the sworn identity theft report in its hands, would have asked the furnisher for the records that show who opened the account, and would have declined to keep publishing an item it could not verify.

74. As a direct and proximate result of TransUnion's negligent failure to comply with 15 U.S.C. § 1681i, Plaintiff suffered the injuries alleged above, and is entitled to actual damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681o.

**COUNT V: Willful Noncompliance With The FCRA Against TransUnion**
**(Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy - Violation of 15 U.S.C. § 1681e(b))**

75. Plaintiff incorporates by reference each of the preceding paragraphs.

76. Pursuant to 15 U.S.C. § 1681e(b), a consumer reporting agency must follow reasonable procedures to assure maximum possible accuracy of the information in its reports.

77. The reporting of the CCS Account was inaccurate. It was patently incorrect, because Plaintiff never opened, authorized, or benefited from the underlying account. It was also misleading in such a way and to such an extent that it can be expected to have an adverse effect on credit decisions, because it presented Plaintiff to every user of his TransUnion consumer report as the obligor on a collection debt.

78. Whether Plaintiff opened or authorized the underlying account is a question of fact that is objectively and readily verifiable from the application and identification records held by CCS and the original creditor. The inaccuracy Plaintiff identifies does not turn on any unsettled question of law.

79. TransUnion failed to follow reasonable procedures to assure maximum possible accuracy of the information it reported concerning Plaintiff. It had no procedure that gave any weight to a sworn federal identity theft report naming the very tradeline it was publishing, no procedure that required the furnisher to produce the records showing who opened the account, and no procedure that stopped publication of an item it had annotated as disputed and had not verified, and no procedure that connected the fraud alert its own file had carried for Plaintiff to a collection account that entered that file afterward.

80. TransUnion held the same identifying information about Plaintiff that Experian and Equifax held, and its own file recorded that he had no delinquent account and no public record. On that information, Experian and Equifax reported no collection account of any kind, and TransUnion alone published the CCS Account against Plaintiff, on the word of a furnisher that produced nothing to support it. A single alleged debt concerning a single consumer does not

produce a charged-off collection at one national agency and no such account at the other two where procedures directed at maximum possible accuracy are followed.

81. TransUnion's failure to establish or follow such procedures was willful, representing a knowing failure to comply with its statutory duties or a reckless disregard for the accuracy of the information it compiles and disseminates concerning Plaintiff.

82. As a direct and proximate result of TransUnion's willful failure to comply with 15 U.S.C. § 1681e(b), Plaintiff suffered the injuries alleged above, and is entitled to actual or statutory damages, punitive damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n.

**COUNT VI: Negligent Noncompliance With The FCRA Against TransUnion**
**(Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy - Violation of 15 U.S.C. § 1681e(b))**

83. Plaintiff incorporates by reference each of the preceding paragraphs.

84. In the alternative to Count V, TransUnion's conduct constituted negligent noncompliance with its duty to follow reasonable procedures to assure maximum possible accuracy of information in its consumer reports under 15 U.S.C. § 1681e(b).

85. TransUnion failed to exercise reasonable care in preparing Plaintiff's consumer reports and in assuring their accuracy, and it released his file to users on at least seven occasions recorded in its own reports between July 2024 and August 2026.

86. As a direct and proximate result of TransUnion's negligent failure to comply with 15 U.S.C. § 1681e(b), Plaintiff suffered the injuries alleged above, and is entitled to actual damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681o.

**COUNT VII: Willful Noncompliance With The FCRA Against TransUnion**
**(Failure to Block Identity Theft Information - Violation of 15 U.S.C. § 1681c-2)**

87. Plaintiff incorporates by reference each of the preceding paragraphs.

88. Pursuant to 15 U.S.C. § 1681c-2(a), a consumer reporting agency must block the reporting of any information in the file of a consumer that the consumer identifies as information that resulted from an alleged identity theft, no later than four (4) business days after the date of receipt by such agency of: (1) appropriate proof of the identity of the consumer; (2) the identification of such information by the consumer; and (3) a statement by the consumer that the information does not relate to any transaction by the consumer.

89. Plaintiff provided TransUnion with all necessary items for an identity theft block under 15 U.S.C. § 1681c-2(a) in the dispute package of June 19, 2026: his New York State driver license, his Social Security card, and a proof of address; the FTC Report identifying the CCS Account as a fraudulent account resulting from identity theft; and his written statement that he did not open the account, authorized no one to open it, and received no benefit from it.

90. The FTC Report alleges an identity theft, is a copy of an official, valid report filed by Plaintiff with the Federal Trade Commission, and subjects Plaintiff to criminal penalties for the filing of false information. It is therefore an "identity theft report" within the meaning of 15 U.S.C. § 1681a(q)(4).

91. TransUnion failed to block the reporting of the CCS Account within four business days of receiving Plaintiff's request and documentation, and it has not blocked it since.

92. Upon information and belief, in the alternative, if TransUnion implemented a block, it rescinded that block without a valid basis and without proper notification to Plaintiff, as the CCS Account continued to appear on Plaintiff's TransUnion consumer report. TransUnion gave Plaintiff no notice of any determination under 15 U.S.C. § 1681c-2(c)(1) and no notice of rescission under 15 U.S.C. § 1681c-2(c)(2), and asked him for nothing further.

93. Separately, 15 U.S.C. § 1681c-2(b) required TransUnion, promptly upon receipt of Plaintiff's block request, to notify CCS that the information it had furnished may be the result of identity theft, that an identity theft report had been filed, that a block had been requested, and of the effective dates of the block. Upon information and belief, TransUnion gave CCS no such notice.

94. TransUnion's failure to block, its failure to notify the furnisher, and its rescission of any block it did implement were willful, demonstrating a knowing or reckless disregard for its obligations under 15 U.S.C. § 1681c-2. Four business days is a fixed deadline that admits of no alternative reading. Eighty-three days after Plaintiff sent TransUnion the FTC Report with his dispute, the CCS Account was still on his TransUnion consumer report as a collection debt he owed.

95. As a direct and proximate result of TransUnion's willful failure to comply with 15 U.S.C. § 1681c-2, Plaintiff suffered the injuries alleged above, and is entitled to actual or statutory damages, punitive damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n.

**COUNT VIII: Negligent Noncompliance With The FCRA Against TransUnion (Failure to Block Identity Theft Information - Violation of 15 U.S.C. § 1681c-2)**

96. Plaintiff incorporates by reference each of the preceding paragraphs.

97. In the alternative to Count VII, TransUnion's conduct constituted negligent noncompliance with its duty to block the reporting of information resulting from identity theft under 15 U.S.C. § 1681c-2.

98. TransUnion failed to exercise reasonable care in implementing or maintaining the required block on information related to the CCS Account, or in notifying CCS of the block request as 15 U.S.C. § 1681c-2(b) requires.

99. As a direct and proximate result of TransUnion's negligent failure to comply with 15 U.S.C. § 1681c-2, Plaintiff suffered the injuries alleged above, and is entitled to actual damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681o.

**COUNT IX: Violations of the Fair Debt Collection Practices Act Against CCS**
**(Violations of 15 U.S.C. §§ 1692e and 1692f)**

100. Plaintiff incorporates by reference each of the preceding paragraphs.

101. Plaintiff is a "consumer" within the meaning of 15 U.S.C. § 1692a(3).

102. The alleged obligation to Esurance, an Allstate company, arose from a personal automobile insurance policy and is a "debt" within the meaning of 15 U.S.C. § 1692a(5).

103. CCS is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6). It regularly collects debts owed or due another, the alleged debt was in default when CCS acquired it for collection, and it holds a New York City debt collection agency license.

104. CCS's furnishing of the CCS Account to TransUnion is a "communication" within the meaning of 15 U.S.C. § 1692a(2), made in connection with the collection of the alleged debt.

105. On August 18, 2026, after it had received notice through TransUnion that Plaintiff disputed the debt as the product of identity theft and had sworn to that fact in a federal identity theft report, CCS communicated to TransUnion that Plaintiff owed a $278.00 charged-off collection debt.

106. That communication falsely represented the character, amount, and legal status of the debt, in violation of 15 U.S.C. § 1692e(2)(A); communicated credit information CCS knew or should have known to be false, in violation of 15 U.S.C. § 1692e(8); and was an unfair and unconscionable means of collecting a debt Plaintiff did not owe, in violation of 15 U.S.C. § 1692f.

107. CCS's violations were not the result of a bona fide error.

108. As a direct and proximate result of CCS's violations of the FDCPA, Plaintiff suffered the injuries alleged above, and is entitled to actual damages, statutory damages of up to $1,000.00, and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against each Defendant on the counts alleged against it, awarding the following:

I. Actual damages in an amount to be determined at trial, including damage to creditworthiness and reputation, lost time, and emotional distress, pursuant to 15 U.S.C. §§ 1681n(a)(1)(A) and 1681o(a)(1);

II. In the alternative to actual damages on claims for willful noncompliance, statutory damages as permitted by 15 U.S.C. § 1681n(a)(1)(A);

III. Punitive damages against each Defendant in an amount to be determined at trial, as allowed under 15 U.S.C. § 1681n(a)(2), for its willful and reckless violations of the FCRA;

IV. Against CCS, statutory damages of up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A);

V. Reasonable attorneys' fees and costs incurred in prosecuting this action, pursuant to 15 U.S.C. §§ 1681n(a)(3), 1681o(a)(2), and 1692k(a)(3);

VI. Pre-judgment and post-judgment interest as allowed by law; and

VII. Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff requests a trial by jury on all issues so triable.

Dated: Brooklyn, New York
September 16, 2026

**PETROFF AMSHEN LLP**
*Attorneys for Plaintiff,*
Stan Malinowski

*/s/ Serge F. Petroff*
Serge F. Petroff, Esq.
1795 Coney Island Avenue, Third Floor
Brooklyn, New York 11230
Telephone: (718) 336-4200
Email: spetroff@petroffamshen.com